**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MISTY DUFF, *et al.*, | : | |
| *Plaintiffs*, | : | Case No. 1:19-cv-750 |
| v. | : | Judge Jeffery P. Hopkins |
| CENTENE CORPORATION, *et al.*, | : | |
| *Defendants*. | : | |

## OPINION AND ORDER

Choosing the right health-insurance plan each year can be time intensive and stressful. That decision often requires consumers to compare coverage options, premiums, and deductibles, as well as determine whether their doctors are within a plan's network. Allegedly, Centene Corporation and its codefendants (together, "Defendants") made that process more difficult. Specifically, Plaintiffs, a group of individuals who purchased health insurance from Defendants, claim that Defendants failed to provide an accurate and up-to-date directory of in-network providers, as required by federal and state regulations. Because Defendants' directory may have listed many providers who were actually out of network, Plaintiffs allege they paid more for their plans' premiums than they would have if they had known the true, limited extent of Defendants' network. Plus, Plaintiffs had to pay out of pocket for services that they believed their insurance contracts covered. As a result, Plaintiffs filed a putative class action, seeking compensatory and punitive damages.

In support of their claims, Plaintiffs secured an expert witness, Dr. Adam E. Block, to determine the extent to which Defendants' directory overstated the providers covered in

network and to calculate an estimate of their damages. Defendants then retained their own expert witness, Mr. Brian E. Hoyt, to rebut Dr. Block's analysis. After both experts submitted their reports, Defendants discovered additional records relevant to this case, so the Court provided both parties with an opportunity to submit supplemental expert reports. Plaintiffs now move to strike Mr. Hoyt's second report, arguing that it improperly supplements his initial disclosure. But that second report does not violate either the Court's rulings or the Federal Rules of Civil Procedure. And even if it did, any error would be harmless.

Accordingly, the Court **DENIES** Plaintiffs' Motion to Strike Defendants' Second Expert Report (Doc. 55).

## I. BACKGROUND

In 2010, Congress enacted the Patient Protection and Affordable Care Act ("ACA") with the stated goal of providing quality, affordable healthcare to all Americans. *See* 42 U.S.C. ch. 157. Among many other provisions, the ACA required each state to establish an exchange where consumers could purchase qualified health-insurance plans. *Id.* § 18031(b)(1). And the ACA placed requirements on health-insurance companies that offered plans through those exchanges. For example, health-insurance companies are required to "publish an up-to-date, accurate, and complete provider directory . . . in a manner that is easily accessible to plan enrollees [and] prospective enrollees." 45 C.F.R. § 156.230(b)(2).

Like many other states, Ohio has implemented its own laws and regulations that govern health insurers, too. Specifically, health-insurance companies may not "misrepresent[] the terms of any policy issued or to be issued or the benefits or advantages promised." Ohio Rev. Code Ann. § 3901.21(A). They also cannot make "any assertion, representation, or statement" that is "untrue, deceptive, or misleading." *Id.* § 3901.21(B). As a result, Ohio

regulations require health-insurance companies to "ensure that the format and content of a provider directory of a health benefit plan is sufficiently complete and clear to avoid deception." Ohio Admin. Code § 3901-8-16(D)(1). To that end, the regulations outline various steps that health insurers must take, such as updating their directories at least quarterly and making "clear to an enrollee which providers and facilities belong to each network." *Id.* § 3901-8-16(D)(1)(a), (h).

Centene Corporation is a publicly traded company that is reportedly the nation's largest insurer on the ACA exchange. Compl., Doc. 1, ¶¶ 34, 36. In Ohio, Centene offers health-insurance plans under the name Ambetter. *Id.* ¶¶ 14, 43. According to Plaintiffs, Centene "advertise[d] that Ambetter's 'most up to date list of in-network providers' is available online on its website" and that "[p]roviders listed in the Ambetter . . . online directory are in-network." *Id.* ¶ 48. Despite these representations, Plaintiffs allege that "Ambetter's online directory appears to be nothing more than a copy of a general medical directory comprised of both providers who do and do not accept Ambetter insurance plans." *Id.* ¶ 49. Indeed, Plaintiffs claim that Ambetter's online directory includes "hundreds of facilities and physicians who do not accept the insurance." *Id.* ¶ 51. The purported goal of these alleged misrepresentations? To attract customers who believe that certain providers are in network. *Id.* ¶ 55. But once those customers purchase an Ambetter policy and visit a physician who was incorrectly listed as in network, Centene denies the claim as "out of network," thus saving the company money and boosting profits. *Id.*

Plaintiffs speak from personal experience. For example, when Misty Duff began shopping for insurance products a few years ago, she sought to confirm that her rheumatologist would be covered. *Id.* ¶¶ 63, 65. After she discovered that her doctor was

included in Ambetter's network directory, Duff purchased an Ambetter policy. *Id.* ¶ 67. But after her first visit with that rheumatologist, Duff received a statement denying payment because her doctor was out of network, which means that Duff may now be on the hook for the bill. *Id.* ¶¶ 69–70. Duff alleges that she "would not have purchased an Ambetter insurance product if she had known her rheumatologist was out-of-network." *Id.* ¶ 72.

Duff also has a minor daughter with specialized medical needs. *Id.* ¶ 73. So when Duff was shopping for insurance policies, she sought to ensure that her plan would cover Cincinnati Children's Hospital and her daughter's specialists. *Id.* ¶¶ 74–75. According to Ambetter's online provider directory, the hospital and her daughter's specialists were in network, so Duff relied on those representations in purchasing an Ambetter policy. *Id.* ¶¶ 75–76. Yet when her daughter had an outpatient procedure and surgery at Cincinnati Children's, Centene denied coverage, claiming the hospital and doctors were out of network. *Id.* ¶ 79. As a result, Duff's daughter has needed to switch to healthcare providers who are actually in Ambetter's network, forcing her care to essentially "start[] all over again" as her new doctors get up to speed. *Id.* ¶¶ 80, 82. Other named plaintiffs alleged similar experiences. *See, e.g.*, *id.* ¶¶ 84–87.

As a result, Plaintiffs filed a putative class action, asserting claims for breach of contract, breach of the duty of good faith and fair dealing, fraud, negligent misrepresentation, and unjust enrichment. *Id.* ¶¶ 133–178. In support of their claims, Plaintiffs retained Dr. Adam E. Block, a health economist, as an expert witness. *See* Doc. 52-1, PageID 1874. Dr. Block opined that Ambetter's "provider network is materially different than what was represented in their provider directory," so members received "a product with a lower overall value than the premium for which the members agreed." *Id.* at PageID 1902–03. Dr. Block

also sought to estimate the number of providers erroneously included in Ambetter's directory and calculate Plaintiffs' damages. *Id.* at PageID 1904–17. To do so, he relied on a sample of 375 providers listed in Ambetter's directory and then searched to see if there was a contract between Ambetter and those providers. *Id.* at PageID 1913–14.

Defendants retained their own expert witness, Mr. Brian E. Hoyt, who is a healthcare consultant, to rebut Dr. Block's report. Doc. 53-2, PageID 2185. Mr. Hoyt took aim at Dr. Block's methodology as "[u]nsupportable" and "oversimplifie[d]." *Id.* at PageID 2189. Mr. Hoyt ultimately concluded that Defendants "did not misrepresent [their] provider network" and "very few, if any, members" were injured by any errors in Ambetter's directory. *Id.* at PageID 2188. That is because many factors besides the size of an insurer's provider network affect premiums, so Plaintiffs did not overpay for their policies. *Id.* at PageID 2196–97. And if Plaintiffs' claims were denied because of an inaccuracy in the provider directory, Ambetter's policy is "to hold members harmless from [such] errors," so Plaintiffs would not need to pay the bill. *Id.* at PageID 2188.

After Mr. Hoyt submitted his report, Defendants located contracts for "all or nearly all of the 375 providers listed in Dr. Block's sample." Hoyt Dep., Doc. 55-3, 38:3–5. As a result, Plaintiffs' counsel sent a letter to Defendants requesting the contracts for all those 375 providers. Doc. 55-5, PageID 2479. In response, Defendants provided the contracts for only the first 100 providers in Dr. Block's sample. Doc. 45, PageID 1792. So Plaintiffs moved for a status conference, Doc. 45, which the Court held in November 2023, Doc. 54. At that status conference, the parties agreed that each side would submit supplemental expert reports and supplemental briefs related to Plaintiffs' pending motion for class certification. Doc. 54, PageID 2425–29. The parties then jointly filed a stipulated proposed schedule, which

permitted Dr. Block to submit a supplemental report by January 15, 2024, and Mr. Hoyt to do the same by March 8, 2024. Doc. 48, PageID 1816. The parties complied with that schedule. *See* Doc. 52-2, PageID 1943; Doc. 52-4, PageID 1992.

Plaintiffs now move to strike Mr. Hoyt's supplemental report, arguing that it violates Federal Rule of Civil Procedure 26(e) because it contains new opinions that go beyond responding to Dr. Block's supplemental report. Doc. 55. Plaintiffs also seek reimbursement for their attorneys' fees and costs in bringing this motion. *Id.* at PageID 2445. Defendants respond that Mr. Hoyt's second report is not a supplemental disclosure within the meaning of Rule 26(e). Doc. 58, PageID 2513. Defendants further contend that even if it was, Mr. Hoyt's second report still complied with Rule 26(e)'s requirements and sanctions are not warranted. *Id.* at PageID 2513–16. Plaintiffs' motion to strike is now fully briefed and ripe for the Court's consideration.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs expert-witness discovery. Under that rule, a party must disclose the identity of any expert witness it may use at trial. Fed. R. Civ. P. 26(a)(2)(A). That disclosure "must be accompanied by a written report," which must contain "a complete statement of all opinions the witness will express and the basis and reasons for them," the facts or data the witness relied on, and the witness's qualifications. Fed. R. Civ. 26(a)(2)(B). The offering party must make this disclosure within the timeline set by the court. Fed. R. Civ. P. 26(a)(2)(D). But "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party," then the offering party must make his disclosure within 30 days following the other party's disclosure. Fed. R. Civ. P.

26(a)(2)(D)(ii). This schedule can, of course, be modified by "stipulation or a court order." Fed. R. Civ. P. 26(a)(2)(D).

But a party's obligations do not end after those disclosures. Rule 26 also imposes on parties an ongoing duty to supplement their expert disclosures. Fed. R. Civ. P. 26(a)(2)(E), (e). That duty kicks in "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

If a party fails to comply with these obligations to disclose expert witnesses and supplement their disclosures, a court may impose sanctions. Fed. R. Civ. P. 37(c)(1). Specifically, the court may prohibit the party from "us[ing] that information or witness to supply evidence on a motion, at a hearing, or at a trial." *Id.* In addition to or in lieu of that sanction, the court may "order payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A). Nevertheless, sanctions are not appropriate if the party's failure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). At bottom, "[d]istrict courts have broad discretion to exclude untimely disclosed expert-witness testimony." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000).

## III. LAW AND ANALYSIS

Plaintiffs contend that Mr. Hoyt's second report is an improper supplemental report that failed to comply with Rule 26(e)'s requirements. As a result, they move to strike that report. But their motion fails for three reasons. First, Mr. Hoyt's second report is not a supplemental report. Instead, it is a rebuttal report, so it does not have to comply with Rule 26(e)'s strictures. Second, even if it was a supplemental report, Mr. Hoyt's second report

substantially complied with Rule 26(e) because he was updating his opinions in response to Mr. Block's supplemental report and deposition. Third, even if Mr. Hoyt's second report was governed by Rule 26(e) and ran afoul of that Rule's guidelines, striking his report still would not be warranted because any violations would be harmless. The Court explains each of these conclusions in turn.

To determine whether an expert's report is a supplement or rebuttal, "substance triumphs over form." *Am. Mun. Power, Inc. v. Voith Hydro, Inc.*, No. 2:17-cv-708, 2021 WL 9964417, at *4 (S.D. Ohio May 18, 2021) (citation omitted). In other words, the Court must "look beyond the label affixed by a party" and evaluate the contents of the expert's report and proffered opinions. *Id.* So what constitutes a rebuttal report? A rebuttal report is "intended solely to contradict or rebut evidence on the same subject matter identified by another party['s]" expert disclosure. Fed. R. Civ. P. 26(a)(2)(D)(ii). A rebuttal report "may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert." *Ohio A. Philip Randolph Inst. v. Smith*, No. 1:18-cv-357, 2019 WL 428371, at *2 (S.D. Ohio Feb. 4, 2019) (citation omitted). But such a report "may not advance new arguments or new evidence outside the scope of the opposing expert's testimony." *Id.* (citation omitted). In contrast, a supplemental report is "limited to correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Winter Enters., LLC v. W. Bend Mut. Ins. Co.*, No. 1:17-cv-360, 2019 WL 3413907, at *8 (S.D. Ohio July 29, 2019) (citation omitted).

A review of Mr. Hoyt's second report makes clear that it is a rebuttal, rather than a supplementation governed by Rule 26(e). Indeed, the entirety of that report's analysis is focused on poking holes in Dr. Block's analysis. *See generally* Doc. 53-1. For example, Mr.

Hoyt argues that Dr. Block's economic model is broken because it relies on false premises. *Id.* at PageID 2131–36. Mr. Hoyt further contends that Dr. Block's methodology for determining the extent to which Defendants overstated their provider network is unreliable. *Id.* at PageID 2145–60. And throughout his second report, Mr. Hoyt does not advance *any* arguments that go beyond responding to Dr. Block's testimony. *See A. Philip Randolph. Inst.*, 2019 WL 428371, at *2. In sum, Mr. Hoyt's second report is a quintessential rebuttal report, so Rule 26(e) simply does not apply here.[1]

Granted, rebuttal reports generally must be filed within 30 days of the other party's initial disclosure. Fed. R. Civ. P. 26(a)(2)(D)(ii). Dr. Block filed his initial report on July 25, 2022, Doc. 52-1, PageID 1873, and Mr. Hoyt did not file his second report until March 8, 2024, Doc. 53-1, PageID 2122. But the default deadline for rebuttal reports can be displaced by "a stipulation or a court order." Fed. R. Civ. P. 26(a)(2)(D). And the parties here jointly agreed that Mr. Hoyt could file a second report by March 8, 2024. Doc. 48, PageID 1816. So Mr. Hoyt's second report is a timely rebuttal.

Nevertheless, Plaintiffs argue that Mr. Hoyt's second report was limited to responding to opinions that Dr. Block expressed in his supplemental report. Doc. 64, PageID 2688 n.7. Yet the Court never limited Mr. Hoyt's second report in that way. *See* Doc. 54, PageID 2525–29. And the parties' stipulated schedule did not limit the contents of Mr. Hoyt's second report, either. *See* Doc. 48, PageID 1816. As Plaintiffs themselves recognize, "[i]n the course of litigation, the parties have to make several tactical decisions." Doc. 64, PageID 2683. Those

---

[1] In contrast, Dr. Block's second report *was* limited to responding to the new data that Defendants provided because he was simply correcting "incomplete or incorrect" analyses in his original report. Fed. R. Civ. P. 26(e)(1). And Dr. Block did not once seek to rebut Mr. Hoyt's conclusions or even mention Mr. Hoyt. *See* Doc. 52-2. That means Dr. Block's second report was a quintessential supplement governed by Rule 26(e).

decisions may ultimately turn out to be "unwise" or short-sighted. *Id.* But what parties "*cannot* do" is "attempt to rectify those decisions in the eleventh hour" by retroactively imposing new limitations. *Id.* Because neither the Court nor the parties' stipulation restricted the contents of Mr. Hoyt's second report, it would be unfair to impose such a limitation after the fact.

In short, Mr. Hoyt's second report is a rebuttal report—not a supplementation—so Rule 26(e)'s strictures do not apply. And because neither the Court nor the parties' stipulation imposed any limitations on the content of that report, there is no basis to strike it now.

But even if Plaintiffs are correct that Mr. Hoyt's second report is a supplementation governed by Rule 26(e), that still would not warrant striking the report. As Defendants note, much of that report responds to calculations in Dr. Block's supplemental report and to Dr. Block's deposition testimony, neither of which existed before Mr. Hoyt filed his initial report. Doc. 58, PageID 2513. Indeed, Defendants explain that Dr. Block's deposition was the first time that Mr. Hoyt was able "to validate flaws in Plaintiffs' purported class-wide damages model put forward by Dr. Block, including flaws that existed in Dr. Block's original 2022 model, new flaws that were introduced in Dr. Block's revised 2024 model, new flaws from his supplemental report, and additional flaws that became evident at the deposition." *Id.* at PageID 2511.

In response, Plaintiffs argue that Rule 26(e) only "allows supplementation to correct inadvertent errors and omissions." Doc. 64, PageID 2688. But courts have consistently recognized that Rule 26(e) also permits an expert to update his report "based on information that was not available at the time of the initial disclosure." *Am. Mun. Power*, 2021 WL 9964417, at *5 (citation omitted). That is exactly what happened here. Neither Dr. Block's deposition testimony nor his supplemental report was available at the time Mr. Hoyt issued

his initial report. So Rule 26(e) permitted Mr. Hoyt to update his report to incorporate that new information.

Plaintiffs then counter that Mr. Hoyt cannot rely on Dr. Block's deposition because Defendants could have insisted on taking that deposition sooner. Doc. 64, PageID 2687. But Plaintiffs identify no case, nor is the Court aware of any, holding that an expert cannot supplement his report to include new information from another expert's deposition simply because the offering party could have deposed the other side's expert sooner. In fact, such a limitation would run headfirst into the plain text of Rule 26(e), which imposes an affirmative *duty* to supplement or correct an expert disclosure whenever new information comes to light that renders the expert's initial disclosure incomplete or inaccurate. Fed. R. Civ. P. 26(e)(1). To see why, consider a simple hypothetical. Imagine Dr. Block's deposition revealed that Mr. Hoyt's initial opinions were incorrect because he relied on objectively flawed data. According to Plaintiffs' theory, Mr. Hoyt would be prohibited from updating his report simply because Defendants could have deposed Dr. Block sooner. But in such a scenario, Rule 26(e)(1) *requires* Mr. Hoyt to supplement his initial report, so Plaintiffs' theory cannot be right. *Id.*

Plaintiffs also take issue with some specific opinions that Mr. Hoyt expressed in his second report. For example, Plaintiffs emphasize that "Mr. Hoyt's initial report did not include any analysis comparing the actual healthcare providers under contract with Defendants versus the providers listed in the provider directory." Doc. 55, PageID 2438. But this argument ignores the fact that the provider contracts were not given to Mr. Hoyt until *after* he completed his initial report. Hoyt Dep., Doc. 55-3, PageID 2468. So he could not have conducted a comparison analysis in his first report. Mr. Hoyt's eventual receipt of the

contracts then provided him with new information, which permitted him to supplement his report. *See Am. Mun. Power*, 2021 WL 9964417, at *5.

Similarly, Plaintiffs contend that Mr. Hoyt's second report improperly includes more detailed criticisms of Dr. Block's methodology and damages model as well as the academic literature upon which Dr. Block relied. Doc. 55, PageID 2439. But that argument cannot carry the day. For starters, some of these new opinions rely on clarifications or admissions that Dr. Block made at his deposition. *See* Doc. 53-1, PageID 2132 n.17, 2333 n.22, 2136 n.35, 2137 n.37, 2138 n.41, 2139 n.42, 2142 n.46, 2144 nn.54–55, 2150 n.70. And others incorporate updated data that Dr. Block provided in his supplemental report. *See id.* at PageID 2150 n.71. As explained above, Mr. Hoyt could properly revise or expand upon his opinions in response to that new information. But Plaintiffs have a point: Parts of Mr. Hoyt's second report simply provide more thorough rebuttals of arguments made or reports cited in Dr. Block's initial report. *See, e.g.*, *id.* at PageID 2131–36. And Defendants have not explained why those additional opinions are proper supplementations under Rule 26(e). But that is not the end of the Court's analysis.

Even if Mr. Hoyt's second report was governed by Rule 26(e) and some of that report ran afoul of the Rule's strictures, striking his report would not be appropriate if that violation "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). To determine whether those conditions are satisfied, courts consider five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure." *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (citation omitted). "District courts have broad discretion in

applying these factors and need not apply each one rigidly." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (citation omitted).

Start with the first factor. Plaintiffs can hardly claim surprise because they knew that Mr. Hoyt was going to rebut Dr. Block's analysis, and they knew Mr. Hoyt's key conclusions. Mr. Hoyt had already provided an extensive report that outlined his background, qualifications, and central opinions. *See generally* Doc. 53-2; *see also* Doc. 55, PageID 2439 (conceding this point). Specifically, Mr. Hoyt asserted that Dr. Block's analysis was fundamentally flawed because he "wrongly assume[d] that [Ambetter] 'states' the size of its network when marketing its insurance, or that the member can discern the size of the provider network from the information provided by the health plan." Doc. 53-2, PageID 2190. Mr. Hoyt also took aim at the economic literature upon which Dr. Block relied. *Id.* at PageID 2195–97. Plaintiffs had access to this initial report since September 2022. *Id.* at PageID 2183. Plus, they deposed Mr. Hoyt about his opinions and methodology in October 2022. Doc. 55, PageID 2433. In short, Plaintiffs have long known the core of Mr. Hoyt's analysis.

As a result, Plaintiffs cannot now claim surprise simply because Mr. Hoyt elaborated upon that analysis. *See Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-cv-115, 2025 WL 2581658, at *10 (S.D. Ohio Sep. 5, 2025) (finding no surprise when Plaintiffs were "aware of" the expert witness "for years," "previously deposed him," knew his core testimony pertained to "an issue at trial," and knew "his qualifications [and] opinions"); *see also Am. Power, LLC v. Harris*, No. 3:17-cv-347, 2024 WL 5200803, at *2–3 (S.D. Ohio Dec. 23, 2024) (finding no surprise when the expert had previously submitted a report by the disclosure deadline and the opposing party "retained their own expert" on the issue). While it is true that Mr. Hoyt further developed some of his opinions in his second report, the Sixth Circuit

has recognized that "it's natural to expect that an expert will supplement, elaborate upon, [and] explain . . . his report." *Martin v. Polaris, Inc.*, No. 24-5852, 2025 WL 3094123, at *8 (6th Cir. Nov. 4, 2025) (citation omitted). This elaboration or explanation frequently occurs at trial, but here, it occurred even earlier in Mr. Hoyt's second report. As a result, "the extra detail" in Mr. Hoyt's second report should not "come as a surprise" to Plaintiffs. *Id.* That is especially true because Plaintiffs explicitly agreed that Mr. Hoyt could provide another report to rebut Dr. Block's claims, and they did not impose any limitations on the contents of that report. *See* Doc. 48, PageID 1816. Thus, the first *Howe* factor favors Defendants.

Second, Plaintiffs can cure any surprise they suffered. As a threshold matter, it is worth noting that "the expert at issue is a rebuttal expert, which . . . does not implicate the same potential prejudices as might a primary expert." *Durham v. Niffenegger*, No. 1:18-cv-91, 2022 WL 1541586, at *5 (S.D. Ohio Apr. 29, 2022). Nevertheless, the Court recognizes that Mr. Hoyt's second report may be relevant to (1) Defendants' motion to exclude Dr. Block's testimony, (2) Plaintiffs' motion for class certification, and (3) any eventual trial. But Plaintiffs have had and will have an opportunity to address Mr. Hoyt's second report at each of those three stages. For example, their response to Defendants' motion to exclude was not due until *after* Mr. Hoyt submitted his second report, which allowed Plaintiffs to counter any of Mr. Hoyt's new opinions. *See* Doc. 59. The Court also granted Plaintiffs permission to file a sur-reply in support of their motion for class certification, which again enabled them to respond to Mr. Hoyt's second report. *See* Doc. 56, PageID 2494; Doc. 70. And Plaintiffs can eventually cross-examine Mr. Hoyt about his analysis at any future trial. *See Howe*, 801 F.3d at 749; *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, 768 F. App'x 459, 469 (6th Cir. 2019) ("[T]he ability

to cross-examine witnesses about late disclosures during trial . . . provide[s] an opportunity to remedy surprise . . . ."). So the second *Howe* favors Defendants as well.

Third, the disclosure of Mr. Hoyt's second report is not likely to disrupt any future trial. After all, this case remains at the class-certification stage, and a trial date has not even been set yet. *See Hobart Corp.*, 2020 WL 5106743, at *5. Furthermore, the Sixth Circuit has explained that "untimely disclosures that occur before a trial commences don't necessarily disrupt it, as the affected party can still cross-examine the witness or introduce competing evidence." *Martin*, 2025 WL 3094123, at *8. So too here. The third *Howe* factor therefore favors Defendants, too.

Fourth, the importance of the evidence cuts both ways. Defendants argue that Mr. Hoyt's second report is "vital to considering their motion for class certification" because "Dr. Block's damages methodology is convoluted and technical." Doc. 58, PageID 2515. That may very well be true. *See TERA II, LLC v. Rice Drilling D, LLC*, No. 2:19-cv-2221, 2024 WL 621002, at *13 (S.D. Ohio Feb. 14, 2024) (finding experts' testimony important because "without their testimony, damages could not be assessed and/or understood"). So striking Mr. Hoyt's second report could hamper Defendants' ability to contest Plaintiffs' motion for class certification. But the Sixth Circuit has also recognized: "The more important the proof, . . . the greater the harm in tardy disclosure." *Bisig*, 940 F.3d at 220 (citation omitted). That means Plaintiffs may suffer greater harm by allowing Defendants to rely on Mr. Hoyt's second report in opposing class certification. In short, the fourth factor does not favor either side.

Finally, Defendants' justification for the disclosure slightly favors Plaintiffs. Defendants simply regurgitate their argument that Dr. Block's supplemental report and

deposition revealed flaws in his methodology, which justified Mr. Hoyt's new opinions in his second report. Doc. 58, PageID 2516. But that does not address the portions of Mr. Hoyt's second report that simply rebut claims made or articles cited in Dr. Block's initial report. Defendants make no effort to explain why *those* shortcomings are justified. Granted, some of the issues here may stem from the parties' failure to impose any limitations on the contents of Mr. Hoyt's second report. *See* Doc. 48, PageID 1816. As a result, it appears that any late disclosure by Defendants "was more likely the result of negligence [or] confusion . . . than underhanded gamesmanship." *Howe*, 801 F.3d at 749. Thus, while this factor "overall favors" Plaintiffs, it ultimately "doesn't carry much weight." *Martin*, 2025 WL 3094123, at *9.

In sum, the *Howe* factors, on the whole, favor Defendants. So even if Mr. Hoyt's second report ran afoul of Rule 26(e), any violation would be harmless, which means sanctions are not appropriate. *See* Fed. R. Civ. P. 37(c)(1); *see also TERA II*, 2024 WL 621002, at *13. Accordingly, the Court will not strike Mr. Hoyt's second report, and Plaintiffs are not entitled to their attorneys' fees in bringing this motion.[2]

## IV. CONCLUSION

For the reasons stated, the Court **DENIES** Plaintiffs' Motion to Strike Defendants' Second Expert Report (Doc. 55).

---

[2] Plaintiffs also argue in a two-sentence footnote that Defendants belatedly produced documents upon which Mr. Hoyt relied in his second report, so those documents should be stricken under Rule 37(c). Doc. 55, PageID 2437 n.4. But it is simply not enough "for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation omitted). Indeed, a party forfeits any issue "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (citation omitted). So Plaintiffs' "passing reference" in a footnote forfeits any Rule 37 challenge to the documents upon which Mr. Hoyt relied. *Ewalt v. Gatehouse Media Ohio Holdings II, Inc.*, --- F.4th ----, No. 25-4015, 2026 WL 2254506, at *4 (6th Cir. Aug. 5, 2026).

**IT IS SO ORDERED.**

August 28, 2026

Jeffery P. Hopkins
United States District Judge