**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MISTY DUFF, *et al.*, | : | |
| *Plaintiffs*, | : | Case No. 1:19-cv-00750 |
| v. | : | Judge Jeffery P. Hopkins |
| CENTENE CORPORATION, *et al.*, | : | |
| *Defendants*. | : | |

# OPINION AND ORDER

Centene Corporation and its codefendants (together, "Defendants") sell health insurance through Ohio's public exchange. Plaintiffs, who purchased Centene's Ambetter insurance product, allege that Defendants failed to provide an accurate and up-to-date directory of in-network providers, as required by representations from Ambetter and by federal and state regulations. Plaintiffs claim that they paid more for Ambetter health insurance than they would have had the directory been accurate. And some Plaintiffs allege unnecessary costs, hassle, and delay in obtaining medical treatment when providers in the directory turned out to not be in network.

Plaintiffs brought a putative class action asking for compensatory and punitive damages, as well as for injunctive relief barring similar conduct in the future. After this Court granted in part and denied in part Defendants' Motion to Dismiss, Plaintiffs moved to certify a class action. Plaintiffs now seek certification of a class and subclass, alleging breach of contract, fraudulent inducement, and breach of the duty of good faith and fair dealing. As

neither class satisfies all the criteria for class certification under Rule 23, the Court **DENIES** Plaintiffs' Motion for Class Certification (Doc. 36).

## I. BACKGROUND

The Court has previously issued opinions detailing the factual background of this case and incorporates those descriptions by reference. Docs. 24, 74. As relevant to this order, Plaintiffs propose (1) a class of all members insured by Ambetter's Ohio insurance from September 9, 2015, to the present and (2) a subclass of members whose claims were denied on account of an out-of-network provider. Doc. 36, PageID 483. Plaintiffs believe there are more than 70,000 members of the full class, 3,200 of which are also members of the subclass. *Id*. at 506.

## II. STANARD OF REVIEW

"Federal Rule of Civil Procedure 23 allows a plaintiff to pursue claims on behalf of a class of similarly situated individuals if she demonstrates that she is part of the class and possesses the same interest and suffers the same injury as the class members." *Davis v. Cintas Corp.*, 717 F.3d 476, 483 (6th Cir. 2013) (citation and internal quotation marks omitted). To proceed with a class action, a "plaintiff must meet a series of conditions laid out in Rule 23 to ensure, first, that she is an appropriate representative for absent class members, and, second, that her claim is appropriate for classwide resolution." *Id.* The bulk of the class-certification analysis "proceeds in two steps." *Id.* First, the plaintiff must meet the four requirements set out in Rule 23(a). The plaintiff must establish that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

If a plaintiff fails to satisfy any one of these four requirements, "her class claim fails at the threshold." *Davis*, 717 F.3d at 483. If a plaintiff satisfies these requirements, the plaintiff must then establish that her case fits into one of the three categories set forth under Federal Rule of Civil Procedure 23(b), which specifies the types of cases that are appropriate for classwide resolution. *Id*. at 483–84. To summarize: "[A] plaintiff must show that she meets all four Rule 23(a) criteria, and that her case falls into at least one of the four Rule 23(b) categories. If she fails to satisfy any of these requirements, class certification is not appropriate." *Id*. at 484.

## III. LAW AND ANALYSIS

Class-action litigation is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979). "In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) (citation and internal quotation marks omitted). The Rule 23 requirements serve the important function, then, of "effectively limit[ing] the class claims to those fairly encompassed by the named plaintiff's claims." *Id.* at 349 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)) (internal quotation marks omitted).

The named plaintiffs bear the burden of establishing these prerequisites. *Id.* at 345. "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule [.]" *Id.* at 350.

Because a class action may bind parties not involved, and perhaps not aware, of the class action, certification of a class implicates interests protected by the Due Process Clause. For this reason, a court must conduct a "rigorous analysis" of the Rule 23 factors before certifying a class action. *Falcon,* 457 U.S. at 161; *see also Dukes,* 564 U.S. at 351. This "rigorous analysis" may "entail some overlap with the merits of the plaintiff's underlying claim." *Id.* (quoting *Falcon*, 457 U.S. at 160–61). And the Court is permitted to "probe behind the pleadings" and "touch[] aspects of the merits." *Id.*

With these principles in mind, the Court proceeds to determine whether Plaintiffs have satisfied the rather stringent Rule 23 requirements. The Court need not consider whether Plaintiffs can satisfy the four requirements of subdivision (a), because even if they could they have failed to demonstrate one of the conditions set forth in subdivision (b).

**A. Rule 23(b)(3) Class**

Starting with the Rule 23(b)(3) class, a putative class may be certified under Rule 23(b)(3) if common questions of law or fact "predominate over any questions affecting only individual members" and if "a class action is superior to other available methods" to fairly and efficiently resolve the controversy. Fed. R. Civ. P. 23(b)(3).

To meet Rule 23(b)(3)'s predominance requirement, parties seeking class certification must show that common questions "predominate over" questions that only affect individual members. *Id*. This inquiry is "far more demanding" than Rule 23(a)(2)'s commonality requirement, so we start here first. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997). Although individual differences between class members need not be nonexistent, they "must be of lesser overall significance and they must be manageable in a single class action[.]" *Hale v. Enerco Grp., Inc.*, 288 F.R.D. 139, 142 (N.D. Ohio 2012) (citation omitted).

Plaintiffs seek Rule 23(b)(3) class certification to bring a claim for (1) breach of contract, (2) fraudulent inducement, and (3) breach of the covenant of good faith and fair dealing. Certification of the full class will be addressed first before evaluating certification of the sub class.

**i. Breach of Contract**

Establishing damages for breach of contract requires individualized calculations that defeat predominance across the class in this dispute. To make out a case for breach of contract under Ohio law, Plaintiffs need to show (1) the existence of a contract; (2) performance by plaintiff; (3) breach by defendant; and (4) damages resulting from the breach. *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012). While Plaintiffs do not need to put a precise number on the amount of damages at the class certification stage, they must show that damages can be proven without complex individualized damages determinations that outweigh common issue in the claim. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013); *Ladd v. Nashville Booting, LLC*, No. 3:20-cv-00626, 2023 WL 3400485, at *14 n.20 (M.D. Tenn. May 11, 2023).

Plaintiffs attempt to satisfy predominance for the damages element by proposing a generalizable method for establishing the damages of each putative class member, however this method is flawed in theory and application. Under their theory of the case, Plaintiffs suffered an injury because they paid more for health insurance than they would have had they known that not all of the doctor's listed on Ambetter's directory were in network. [1] Plaintiffs

[1] Plaintiffs affirmatively waived their claim related to network adequacy. Doc. 71, PageID 2758 n.3.

contend that their expectation damages for this alleged injury can be calculated for each class member by determining the percent that they overpaid for a smaller provider network.

But Plaintiffs do not offer a satisfactory method to determine expectation damages. Expectation damages are designed to put each class member back in the "position" she "would have been in had the contract been fully performed." *Hanuman Chalisa, LLC v. BoMar Contracting, Inc.*, 187 N.E.3d 1108, 1115 (10th Dist. 2022). The most natural measure of expectation damages in this case is the out-of-pocket costs to Plaintiffs to receive the specific medical care that they believed was covered by the Ambetter plan. If Ambetter had fully performed, Plaintiffs would have received the promised medical care, not a lesser degree of medical care and a partial reimbursement for a smaller provider network. Assessing the out-of-pocket costs of treatment, however, requires complex individualized calculations specific to each Plaintiff. So, instead, Plaintiffs suggest that expectation damages can be calculated for the class by discounting the amount that members paid for their health insurance premiums (or that were subsidized by the government) by the percent that a smaller network of providers affects network price.

In class action suits, damages models can be used to provide a common method for calculating individual class member's damages at scale, relieving the court of performing a specific damages inquiry for each member of the class. *Comcast*, 569 U.S. at 34. But, for a model to accurately calculate individual members' damages, "any model supporting a 'plaintiff's damages case must be consistent with its liability case . . . .'" *Id*. at 35 (quoting ABA Section of Antitrust Law, Proving Antitrust Damages: Legal and Economic Issues 57, 62 (2d ed. 2010)). This ensures that the damages measured by the model actually correspond to the plaintiff's theory of the case.

But even if calculating what Plaintiffs overpaid is an appropriate measure of expectation damages, Plaintiffs failed to provide a model that appropriately discounts the price paid by the level of coverage actually received. Plaintiffs' model does not correspond to their theory of the case, nor was it reliably executed. For the reasons set forth in the Order Granting Defendants' Motion to Exclude Dr. Block's Testimony, the model Plaintiffs provide does not establish the percent that class members allegedly overpaid on their insurance premiums. Doc. 75. Accordingly, this Court granted the Motion to exclude Plaintiffs' report, including their model for damages.

Without this model, Plaintiffs do not have a uniform method for establishing damages across the class. Since Plaintiffs have no way to show how much they overpaid for the services they received, the only viable method to establish expectation damages is to calculate each Plaintiff's "out-of-pocket costs" to get the level of care that Defendants' policy owed them. And this turns on a host of individualized factors such as whether a class member sought care from a different physician or went without treatment, if the second physician was in network or out of network, if the service sought was even covered by the plan, if the class member paid the second physician or fought the bill, if Defendants ever reimbursed the class member for out-of-pocket expenses, and, if so, by how much.

Running out-of-pocket cost calculations for each member of Plaintiffs' proposed 70,000-person class will predominate over common issues raised in this case. When a class action implicates complex damages calculations for each class members, "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Comcast Corp.*, 569 U.S. at 34. Due to the time intensive inquiry needed to establish damages

on a member-by-member basis, this Court finds that individual questions predominate over common issues raised in this litigation.

And the predominance issues in establishing damages for breach of contract similarly exist for calculating damages under Plaintiff's two other claims: fraudulent inducement and breach of the duty of good faith and fair dealing. While fraudulent inducement and breach of the duty of good faith and fair dealing are torts that entitle successful Plaintiffs to tort damages, Plaintiffs propose that their expert damages model can measure tort damages as well. But with the exclusion of the expert model, Plaintiffs are once again left without a generalizable method to prove damages.

**ii. Fraudulent Inducement**

Plaintiffs' claim for fraudulent inducement suffers from an additional predominance issue in establishing the injury element of the claim. The elements of fraudulent inducement are: "(1) a representation or, when there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that such knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) with justifiable reliance on the misrepresentation or concealment, and (6) an injury proximately caused by that reliance." *Brownfield Restoration Grp., LLC v. Trickett*, 122 N.E.3d 570, 577 (11th Dist. 2018) (quotation omitted).

As it comes to establishing injury, Plaintiffs' fraudulent inducement claim suffers from a similar methodological issue to the one that precluded a uniform method for proving damages in the breach of contract claim. Assuming for the sake of argument that Plaintiffs can demonstrate all the other elements of fraudulent inducement, they must also be able to

show that they were injured through relying on fraudulent representations. But Plaintiffs do not have a uniform method to show whether each class member was injured or not by inaccuracies in the directory. While some class members certainly suffered injuries, others likely never encountered an inaccurate listing in the provider directory, let alone suffered an injury because of the directory. To establish whether a class member was injured requires a person-by-person inquiry. Each class member would need to prove that they saw an inaccurate listing and suffered consequences because of it—such as being denied medical care or receiving delayed care, or if they were forced to pay out-of-pocket. If out-of-pocket costs are alleged, establishing injury also requires determining whether the class member was ever reimbursed by Defendants.

The complex and fact-intensive nature of proving injury from a smaller network of providers than is listed in the directory means that individual issues predominate. To establish injury, this Court would need to determine how each individual Plaintiff interacted with the directory, what actions they took afterwards, and if this resulted in an injury that was proximately caused by the alleged fraudulent representation. Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 594. But given the differences between class members, the individualized inquiry needed to establish injury for this fraudulent inducement claim is so weighty that it predominates over other parts of the claim.

**iii. Breach of Good Faith and Fair Dealing**

Plaintiffs' claim for a breach of the duty of good faith and fair dealing also suffers from predominance defects. Under Ohio law, "an insurance company has a fiduciary duty . . . to act in good faith toward its insured in carrying out its duties under the contract." *CyrusOne,*

*LLC v. Great Am. Ins. Co.*, 2021-Ohio-1971, ¶ 71 (1st Dist.). Plaintiffs alleged a breach of this duty in denying claims for providers who are listed in the directory and in failure to maintain an accurate directory. First, addressing breach of good faith and fair dealing with respect to denying claims, the test for whether an insurance company's decision to deny benefits is "not" whether the decision was "*correct,*" but rather if "the decision to deny benefits was arbitrary or capricious, and there existed a reasonable justification for the denial." *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 711 (6th Cir. 1992) (emphasis in the original).

Setting aside the fact that most class members did not have a claim denied due to a provider being out of network, eliminating other reasonable justifications for why a particular claim was denied is not susceptible to classwide demonstration. If Plaintiffs only needed to show that an inaccurate directory entry was one of the reasons why their claim was denied, Plaintiffs could establish this by their proposed method of comparing claims that were denied in Defendants' denial database as being out of network with the directory listings for the same time period. But a case for the bad faith denial of an insurance claim will not succeed if there is reasonable justification for denying the claim. Pointing to a line in the denial database is not enough to make this showing. Even if the only reason listed in the denial database is that the provider is out of network, this does not mean that other justifications for denying the claim did not exist. Defendants should have a chance to make such a showing, which will necessarily be individualized to the details of a particular claim, doctor, and class member.

Individual issues at play in demonstrating bad faith in the denial of insurance claims once again implicate predominance. Certification under Rule 23(b)(3) requires that "issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young v. Nationwide Mut. Ins. Co.*, 693

F.3d 532, 544 (6th Cir. 2012) (citation omitted). But when establishing a claim for breach of the duty of good faith and fair dealing opens the door to litigating the specifics of each denied claim, this requirement is not met.

Second, Plaintiffs cannot show that Defendants breached their duty to act in good faith due to inaccuracies in the provider database without also infecting trial with an influx of individual issues. Not every deviation from a contract, even an insurance contract, entails a breach of good faith. *See Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276 (1983). So even if any inaccuracy in the database is a breach of contract, Plaintiffs' attempt to point to inaccuracies in the database in order to establish bad faith is not enough. Elaborating on insurers' legal duty to act in good faith, the Ohio Supreme Court explained that "[a] lack of good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence." *Id.* at 1320 (citation omitted). Actual intent is not required for an insurance company to breach the duty of good faith.

But Plaintiffs do not propose a method of investigating bad faith on a classwide basis that could rule out reasonable delays in updating the database (such as when a provider has just left a network) or mere negligence in directory maintenance. Like with the denial of insurance claims, Defendants are entitled to make a showing that specific inaccuracies were not due to bad faith. And this will turn on a host of individual factors such as why the database was not updated, whether Defendants had notice of the error, and how long it took Defendants to correct the inaccuracy.

The specific nature of why each error occurred and how Defendants addressed it is likely to predominate over common issues at trial. As opposed to litigating questions of law and fact common to the class as a whole, adjudicating the particular reasons why a certain

doctor was inaccurately listed in the database will detract from common issues and the efficiencies that recommend class litigation in the first place. Viewed in light of the other issues of the claim, individualized issues regarding what constitutes breach are likely to predominate at trial.

**iv. Subclass**

Plaintiffs' putative subclass also suffers from predominance issues as it comes to a measure for calculating damages. As the subclass is defined, each member of the subclass had a health insurance claim denied for an out-of-network provider despite the provider being listed as in network at the time. Plaintiffs propose in their Motion for Class Certification that subclass damages should be "equal to the amount of out-of-pocket costs incurred due to the denied claim." Doc. 36, PageID 492. While starting with the subclass avoids one of the fact specific questions necessary to calculate out-of-pocket damages for the full class—if the class member was denied coverage—the rest of the damages calculation inquiry remains the same.

Even for members of the subclass, establishing damages requires complex individual calculations. Determining damages for the subclass will require knowing if the subclass member looked at the directory to check if a provider was listed before seeking coverage. And if the denial can be traced to reliance on the directory, this does not necessarily mean that the subclass member incurred damages. Determining damages still depends on whether Plaintiff sought care from a different physician or went without treatment, if the second physician was in network or out of network, if the service sought was even covered by the plan in the first instance, if Plaintiff paid the second physician or fought the bill, if Defendants reimbursed Plaintiff for out-of-pocket expenses after initially denying the claim, and if the reimbursement was for the full out-of-pocket amount.

As with the full class, the complex and fact-intensive nature of establishing damages for individual subclass members vastly predominate over common issues at trial. The question raised in calculating subclass member's out-of-pocket damages "will inevitably overwhelm questions common to the class." *Comcast Corp.*, 569 U.S. at 34. Thus, regardless of what claim the subclass presses in this case, the complexity of determining individual damages precludes class certification under Rule 23(b)(3).

To the extent that Plaintiffs indicated in filings after their motion to certify a class action that they are seeking disgorgement as an alternative measure of damages for the subclass, any claim for unjust enrichment was forfeited as it was not raised in the original motion. And even if unjust enrichment had been properly raised, determining whether any profits were wrongfully retained does not merely depend on whether a subclass member's claim was initially denied since Defendants may have resolved the claim later or paid for out-of-pocket expenses. So even disgorgement is not capable of a simple methodological determination on a subclass-wide basis.

Because the subclass cannot avoid predominance issues in calculating damages, they cannot demonstrate that they satisfy the predominance requirement for class certification under Rule 23(b)(3). And, like the full class, the subclass also fails the predominance requirement for separate reasons with respect to the fraudulent inducement and breach of good faith and fair dealing claims.

Whether members of the subclass suffered injury from fraudulent inducement implicates individualized issues in the same way as the full class. To establish injury, each subclass member needs to show how they interacted with the directory, what actions they took afterwards, and if this resulted in an injury that was proximately caused by fraudulent

representations. Replacing the full class with the subclass does not save the fraudulent inducement claim from predominance issues in establishing injury.

Likewise, substituting the subclass for the full class cannot resolve predominance issues over the good faith and fair dealing claim. Good faith implicates predominance because Plaintiffs lack a general method to show that no other reasonable basis existed for denying a claim. Similarly, demonstrating that directory inaccuracies were due to bad faith opens the door to litigating highly specific and individualized issues for each entry. The fact that every member of a subclass had an out-of-network denial does not reduce the fact specific inquiry needed to establish bad faith.

**B. Rule 23(b)(2) Class**

Addressing the proposed Rule 23(b)(2) class next, a class can be certified under this provision if it meets the requirements of Rule 23(a) and, in addition, if the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment . . . [or] when each class member would be entitled to an individualized award of monetary damages." *Dukes,* 564 U.S. at 360–61 (emphasis in original). Instead, a Rule 23(b)(2) class is proper "[w]hen a class seeks an indivisible injunction benefiting all its members at once . . . " *Id.* at 362.

Plaintiffs request two injunctions for the full class. First, they seek an injunction enjoining Defendants from "listing healthcare providers on their provider directory if they are, in fact, out-of-network." Second, they seek an injunction "prohibiting Defendants from

denying member's claims due to the provider being out-of-network but listed on Defendants' provider directory." Doc. 36, PageID 493, 524.

The first injunction, which mandates an accurate provider directory, does not meet the Rule 23(b)(2) criteria because it will not benefit the class as a whole. Relief under Rule 23(b)(2) must "benefit[] all [class] members at once . . . " *Duke*, 564 U.S. at 362. Because of the unified nature of relief under Rule 23(b)(2), "there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute." *Id.* at 362–63. But the requested injunction will only benefit class members who are still insured by Ambetter, not the class as a whole. Requiring Defendants to maintain an accurate directory going forward provides no relief to class members who have ceased to be insured by Ambetter. This raises serious questions about the suitability of resolving all class member's claims when only some class members will benefit and precludes certification under Rule 23(b)(2).

Plaintiffs counter that while some class members are not currently insured by Ambetter, those who have left the plan could seek coverage from Ambetter in the future. Thus, they could benefit from the injunction. But this fails to assuage concerns at the core of Rule 23—namely that class members, who cannot opt out of a Rule 23(b)(2) class, will have different interests that cannot be fairly delt with in a uniform resolution.

The second injunction, which would prohibit Defendants from denying claims due to a provider being out of network when they are listed in the provider directory, fails Rule 23(b)(2)'s requirements because it is a direct request for individual monetary relief offered in the form of an injunction. Claims for monetary relief may not be certified under Rule 23(b)(2), "at least where . . . the monetary relief is not incidental to the injunctive or declaratory relief."

*Id.* at 360. Instead, direct claims for individualized monetary relief belong in a Rule 23(b)(3) class where they can benefit from Rule 23(b)(3)'s additional protections for varied class interests. *Id*. at 360–61.

But an injunction that prohibits Defendants from denying certain claims must of necessity require that Defendants pay individualized amounts to cover these claims. The injunction thus mandates "[i]ndividualized monetary relief [that] is . . . not incidental to the injunctive and declaratory relief [plaintiff] seeks." *Davis*, 717 F.3d at 491. Individualized payments to class members of this sort do not belong in Rule 23(b)(2). So certification under Rule 23(b)(2) is not proper.

## IV. CONCLUSION

For the reasons stated, the Court **DENIES** Plaintiffs' Motion for Class Certification (Doc. 36) with respect to the full class and sub-class.

**IT IS SO ORDERED.**

September 14, 2026

Jeffery P. Hopkins
United States District Judge